IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

JOSEPH KING, ISAAC SLADE,
DAVID WELSH, and
BENJAMIN WYSOCKI, p/k/a The FRAY

      Plaintiffs,

v.

GREGG LATTERMAN and GREGG
ALAN CORP

      Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs Joseph King, Isaac Slade, David Welsh and Benjamin Wysocki p/k/a the Fray complain against Defendants Gregg Latterman ("Latterman") and Greg Alan Corp ("GAC") as follows:

1. Plaintiff Joseph King is an individual residing in Denver, Colorado.

2. Plaintiff Isaac Slade is an individual residing in Denver, Colorado.

3. Plaintiff David Welsh is an individual residing in Denver, Colorado.

4. Plaintiff Benjamin Wysocki is an individual residing in San Francisco, California.

5. Defendant Gregg Latterman is an individual residing in Evanston, Illinois.

6. Upon information and belief, Defendant Gregg Alan Corp. is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Evanston, Illinois.

## JURISDICTION AND VENUE

7. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a). The amount in controversy exceeds $75,000 and the matter is between citizens of different states.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391 (a) because a substantial part of the acts or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

1. Plaintiffs are world-renowned recording artists, songwriters and entertainers and perform together professionally as the musical group "The Fray."

2. GAC is in the business of providing personal management services and does business as "A Squared Management."

3. Upon information and belief, Latterman is the sole owner of GAC.

4. At all times after the formation of GAC, Latterman acted as agent for GAC in connection with its business dealings with Plaintiffs.

5. On or about November 1, 2004, Plaintiffs and Latterman entered into an oral management agreement whereby Latterman was to perform duties as Plaintiffs' manager in exchange for a 20% commission.

6. As of July 1, 2005, Plaintiffs King and Slade entered into a publishing agreement with EMI April Music, Inc. ("Publishing Agreement"). At the time King and Slade entered into the Publishing Agreement, they were not advised that GAC was a party to an agreement with EMI that granted GAC a 35% interest in the EMI's share of the publishing income (escalating to 50% upon recoupment), as well as receiving a 50% ownership interest in EMI's share of the copyright ownership, derived from musical compositions written by King and Slade pursuant to the Publishing Agreement.

7. Plaintiffs Wysocki and Welsh are entitled to receive a portion of King and Slade's publishing income.

8. In January 2007, GAC and Plaintiffs entered into a written management agreement, effective as of June 1, 2005 ("Management Agreement"), a copy of which is attached hereto as Exhibit A.

9. At the time Plaintiffs entered into the Management Agreement, they were not advised that GAC was a party to an agreement ("EMI Agreement") with EMI Entertainment World Inc. ("EMI") that granted GAC a 35% interest in EMI's share of the publishing income (escalating to 50% upon recoupment), as well as receiving a 50% ownership interest in EMI's share of the copyright ownership with respect to musical compositions written by songwriters that were induced to sign to EMI by GAC and Latterman. Under the terms of the Management Agreement, GAC received a 20% commission on up to $800,000 of songwriting and music publishing income of the Plaintiffs from EMI and a 15% commission thereafter. With respect to songwriting income paid by ASCAP, GAC received a 20% on income for accounting periods prior to prior to September 30, 2006, and a 15% commission for periods thereafter.

10. As of August 31, 2009, GAC has received commissions in excess of $2.1 million from the Plaintiffs' publishing and songwriting income and has received in excess of $700,000 from the EMI Agreement.

## FIRST CAUSE OF ACTION
(Fraud/Misrepresentation: Publishing Agreement)

11. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 10 as if fully set forth herein.

12. At the time King and Slade entered into the Publishing Agreement, Latterman and GAC made numerous misrepresentations of material fact and/ or material omissions when under a duty to disclose them, among other things, knowingly misrepresenting that GAC was only being paid a "finder's fee" in connection with the Publishing Agreement and concealing and/ or failing to disclose that GAC would be receiving a 35% interest in the EMI's share of the publishing income (escalating to 50% upon recoupment), as well as receiving a 50% ownership interest in EMI's share of the copyright ownership, derived from musical compositions written by King and Slade pursuant to the Publishing Agreement.

13. Latterman and GAC made the foregoing misrepresentations with the intent to deceive Plaintiffs for their own enrichment.

14. Plaintiffs reasonably relied upon Defendants' misrepresentations based upon the trust and confidence reposed in the Defendants and based upon their fiduciary roles as Plaintiffs' personal manager.

15. Defendants' misrepresentations were material and Plaintiffs would not have been deprived of valuable assets and income that should rightly be theirs but for Defendants' fraud.

16. By virtue of the foregoing conduct, Plaintiffs have been damaged, which damages are the natural and proximate consequences of Defendants' misrepresentations in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty: Publishing Agreement)

17.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 16 as if fully set forth herein.

18.     At the time King and Slade entered into the Publishing Agreement, GAC and Latterman were acting as Plaintiffs' personal manager and had a fiduciary relationship with Plaintiffs.

19.     Defendants were fully aware that under the terms of the EMI Agreement that GAC would be receiving a 35% interest in EMI's share of the publishing income (escalating to 50% upon recoupment), as well as receiving a 50% ownership interest in EMI's share of the copyright ownership, derived from musical compositions written by King and Slade pursuant to the Publishing Agreement. Notwithstanding this fact, the Defendants never notified Plaintiffs of such interests and, in fact, concealed their existence from Plaintiffs.

20.     As fiduciaries, the Defendants owed a duty of utmost loyalty and good faith to Plaintiffs and had a duty to disclose all material facts that they knew, had a reason to know, or should have known would reasonably affect King and Slade's' judgment relating to the Publishing Agreement.

21.     These actions constituted a breach of Defendants' fiduciary duties to Plaintiffs and as direct and proximate result of such conduct Plaintiffs suffered substantial damages.

## THIRD CAUSE OF ACTION
### ("Constructive Trust")

22.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 21 as if fully set forth herein.

23. By reason of the fraudulent and otherwise wrongful manner in which GAC obtained an income and ownership interest in the income and copyright ownership derived from the musical compositions written by King and Slade pursuant to the Publishing Agreement, GAC has no legal or equitable claim or interest therein, but instead is an involuntary trustee holding said property and profits therefrom in a constructive trust for Plaintiffs with a duty to convey the same to Plaintiffs.

24. Plaintiffs are entitled to damages and a declaration that Defendants are holding the 35% interest in the EMI's share of the publishing income from (escalating to 50% upon recoupment), as well as receiving a 50% ownership interest in EMI's share of the copyright ownership in, musical compositions written by King and Slade pursuant to the Publishing Agreement.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

25. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

26. By reason of the fraudulent and otherwise wrongful manner in which Defendants obtained an income and ownership interest in the income and copyright ownership derived from the musical compositions written by King and Slade pursuant to the Publishing Agreement, Defendants have been unjustly enriched and Plaintiffs been equally damaged in an amount to be determined at trial.

27. Defendants owe a duty, in equity and good conscience, to pay Plaintiffs the value of the benefit conferred upon them, the value of which is an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty: Management Agreement)

28. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29. At the time Plaintiffs entered into the Management Agreement, GAC and Latterman had been acting as Plaintiffs' personal manager for more than two years and had a fiduciary relationship with Plaintiffs.

30. Defendants were fully aware that under the terms of the EMI Agreement that GAC would be receiving a 35% interest in the EMI's share of the publishing income (escalating to 50% upon recoupment), as well as receiving a 50% ownership interest in EMI's share of the copyright ownership derived, from musical compositions written by King and Slade pursuant to the Publishing Agreement. Notwithstanding this fact, the Defendants never notified Plaintiffs of such interests and, in fact, concealed their existence from Plaintiffs.

31. As fiduciaries, the Defendants owed a duty of utmost loyalty and good faith to Plaintiffs and had a duty to disclose all material facts that they knew, had a reason to know, or should have known would reasonably affect Plaintiffs' judgment relating to the Publishing Agreement.

32. These actions constituted a breach of Defendants' fiduciary duties to Plaintiffs and as direct and proximate result of such conduct, Plaintiffs suffered substantial damages.

33. Plaintiffs would never have entered into the Management Agreement and allowed Defendants to commissions Plaintiffs' songwriting and publishing income, but for Plaintiffs breaches of fiduciary duties described above.

## SIXTH CAUSE OF ACTION
(Fraud in the Inducement: Management Agreement)

34. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 33 as if fully set forth herein.

35. At the time Plaintiffs entered into the Management Agreement, Latterman and GAC made numerous misrepresentations of material fact and/ or material omissions when under a duty to disclose them, among other things, knowingly misrepresenting that GAC was only being paid a "finder's fee" in connection with the Publishing Agreement and concealing and/ or failing to disclose that GAC would be receiving a 35% interest in EMI's share of the publishing income (escalating to 50% upon recoupment), as well as receiving a 50% ownership interest in EMI's share of the copyright ownership derived, from musical compositions written by King and Slade pursuant to the Publishing Agreement.

36. Latterman and GAC made the foregoing misrepresentations with the intent to deceive Plaintiffs for their own enrichment.

37. Plaintiffs reasonably relied upon Defendants' misrepresentations based upon the trust and confidence reposed in the Defendants and based upon their fiduciary roles as Plaintiffs' personal manager.

38. Defendants' misrepresentations were material and Plaintiffs would not have been deprived of valuable assets and income that should rightly be theirs but for Defendants' fraud.

39. By virtue of the foregoing conduct, Plaintiffs were fraudulently induced to enter into the Management Agreement and Plaintiffs have been damaged, which damages are the natural and proximate consequences of Defendants' misrepresentations in an

amount to be proven at trial. Further, Plaintiffs are entitled to terminate the Management Agreement and a declaration that Management Agreement is terminated.

### SEVENTH CAUSE OF ACTION
### (Breach of Contract: Management Agreement)

40. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-39 as if fully set forth herein..

41. Under paragraph 3(b)(x) of the Management Agreement, Manager is not entitled to commission income from "any engagement or agreement under which Artist is employed or otherwise engaged by Manager or any firm or corporation owned or controlled by or affiliated with Manager."

42. The EMI Agreement substitutes "partnership" or "joint venture" between EMI and GAC pursuant to which GAC is affiliated with EMI.

43. Defendants have materially breached the Management Agreement by commissioning income received by Plaintiffs from EMI and ASCAP.

44. By virtue of the foregoing material breach of contract, Plaintiffs have been damaged, which damages are the natural and proximate consequences of Defendants' breach in an amount to be proven at trial. Further, Plaintiffs are entitled to terminate the Management Agreement and a declaration that Management Agreement is terminated.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

1. For compensatory damages in an amount to be determined at trial, but believed to be in excess of Three Million Dollars ($3,000.000), plus interest thereon,

2. For punitive damages in an amount to be determined at trial;

3. For attorneys' fees and costs;

4. For a declaration that the Management Agreement is terminated;

4. For a declaration that Defendants are holding all publishing income received from EMI from musical compositions written by King and Slade and the copyright ownership interest therein as constructive trustees for Plaintiffs;

5. That Plaintiffs be awarded such other and further relief as the Court shall deem just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**DATED** this 14th day of September, 2009

By: s/ Ryan C. Carson
John Roche, Esq.
Ryan C. Carson, Esq.
Taylor/Anderson, LLC
1331 Seventeenth Street, Suite 1050
Denver, CO 80202
Phone: 303-551-6654
Facsimile: 720-473-5980
Email: rcarson@talawfirm.com

Robert L. Sullivan, Esq.
Loeb & Loeb LLP
1906 Acklen Avenue
Nashville, TN 37212
615.749.8300
615.676.5189 (fax)

*Counsel for Plaintiff*