IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02194-WYD-BNB

JOSEPH KING,
ISAAC SLADE,
DAVID WELSH and
BENJAMIN WYSOCKI, p/k/a The FRAY

      Plaintiffs,

v.

GREGG LATTERMAN and
GREGG ALAN CORP

      Defendants.

---

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
NOTICE OF DESIGNATION OF NON-PARTY AT FAULT AND
OPPOSITION TO ALTERNATIVE MOTION TO STRIKE[1]**

---

Defendants submit this Reply in Support of their Motion for Leave to File Notice of Designation of Non-Party at Fault. Plaintiffs object to the non-party at fault designation for two reasons. First, they complain that the filing is late. Second, they complain that the designation does not meet the necessary criteria as set forth in *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 80 (Colo. 2001). The Court should reject these arguments and grant the

---

[1] Defendants object to the Plaintiffs' inclusion of a "Motion to Strike" with their "Opposition to the Motion for Leave to File." First, to include a motion with an opposition is a violation of D.C.COLO.LCivR 7.1(c) ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."). It is also a transparent attempt by Plaintiffs to obtain the right to submit another pleading—a Reply in support of their Motion to Strike. The briefing on this subject should end here.

Motion. There is a reasonable explanation for the delay in filing, no unfair prejudice to the Plaintiffs, and the designation fulfills all the necessary statutory criteria.

### FACTUAL BACKGROUND OF THIS DISPUTE

The Plaintiffs in this case are members of the popular rock group, The Fray. Joseph King and Isaac Slade are the band's primary songwriters. Defendants are the band's manager, Gregg Latterman, and Latterman's company, Gregg Alan Corp. (collectively, "Latterman"). The members of the Fray have sued Latterman for breach of fiduciary duty, fraud and breach of contract, claiming that in advising the band to enter into a music publishing contract with EMI Music Publishing ("EMI"), Latterman had a conflict of interest due to an (allegedly) undisclosed agreement with EMI, whereby Latterman would receive from EMI a share of The Fray's copyrights and royalties. Plaintiffs allege that The Fray accepted EMI's publishing offer on Latterman's self-interested recommendation despite the existence of another potentially more lucrative publishing deal available with a different company. Plaintiffs also assert that Latterman's contractual relationship with EMI should have barred Latterman from taking management commissions on any publishing royalties due The Fray.

In his defense, Latterman asserts that he informed both band leader Joe King and the band's attorney, Reid Hunter, of (i) the existence of his agreement with EMI, (ii) the fact that he was receiving advances, and (iii) the fact that if EMI signed any songwriters introduced by Latterman to EMI, Latterman would receive a portion of EMI's publisher's share, but Latterman would not receive additional money until the advances were fully paid back ("recouped" in the terminology of the industry).

## THE SPECIFICS OF THE NON-PARTY AT FAULT DESIGNATION OF REID HUNTER

Latterman's Designation of Non-Party at Fault ("Designation") identified the band's attorney, Reid Hunter, as potentially at fault in this matter. In the Designation, Latterman explained that prior to the band executing any publishing agreement with EMI, Latterman had disclosed the existence of Latterman's agreement with EMI to Mr. Hunter. Latterman made the disclosure "so that Mr. Hunter (and the band he represented) would know that Mr. Latterman had a potential conflict of interest with respect to any potential publishing transaction." Designation at 1.

The Designation comports with the statutory requirement of being a "brief statement of the basis for fault." C.R.S. §13-21-111.5. The Designation includes all the required necessary elements of a claim of professional negligence against Hunter: "the existence of a duty, a breach of that duty, causation and damages." *Redden* at 80[2]; *c.f. Miller v. Byrne*, 916 P.2d 566, 577 (Colo. App. 1995) (non-party designation appropriately stricken because it did not satisfy element of "duty" in liability equation).

Specifically with respect to the **existence of a duty** to the Plaintiffs, the Designation alleges:

- that attorney Hunter was "representing [Plaintiffs] King and Slade in their negotiation of a publishing agreement;"

---

[2]  *Redden* involved a non-party at fault designation of a health care professional. When a licensed health care professional is involved, the requirements and procedures of C.R.S. 13-20-602 apply, meaning that a certificate of review must be executed by the attorney for the plaintiff declaring that an expert has been consulted and the allegation does not lack substantial justification. *Redden*, 38 P.3d at 82. Although Hunter is a licensed professional, he is not a health care professional, so the certificate of review requirements do not apply to his designation as a non-party at fault.

- that "Hunter was hired to advise Plaintiffs regarding a publishing agreement, [and] was the lead negotiator for King and Slade regarding a publishing agreement;"

- that Hunter had a "duty to protect his clients interests;"

- and that Hunter, "as the Fray's attorney, had a legal obligation to look out for Slade and King and the Band's interests, especially in a situation where the manager had disclosed the existence of a potential conflict."

With respect to the **breach of his duty** as an attorney to the Plaintiffs, the Designation alleges:

- that Hunter was aware of Mr. Latterman's conflict of interest, including specifically that Mr. Latterman had an agreement with EMI whereby Mr. Latterman would receive compensation if the Fray were to sign with EMI;

- that Hunter failed to ask any questions about the conflict of interest;

- that Hunter failed to ask for a copy of Latterman's agreement with EMI;

- that Hunter knew his client, Mr. King, was going to be speaking with Mr. Latterman about the conflict, but "did not provide Mr. King any advice or direction as to what kind of questions he should ask Mr. Latterman;"

- that Hunter declined to ask any questions directly of Mr. Latterman, because Hunter felt "it was a difficult proposition when one is a new lawyer in the relationship to go grilling the manager on the first day;"

- that although Hunter now claims that he was aware another publishing company, Sony-ATV, also was interested in a publishing agreement with King and Slade, Hunter (despite the fact that he was lead negotiator for the band) failed to communicate with Sony-ATV about its alleged offer, and instead advised Plaintiffs to enter into the supposedly less-lucrative publishing agreement with EMI;

- and that Hunter "failed in his duty to protect his clients' interests by failing to inquire about the specifics [of Mr. Latterman's disclosed conflict of interest] and failing to follow up at all with his clients regarding the potential conflict and by failing to follow up with Sony-ATV about the alleged publishing offer."

With respect to **damages and causation**, the Designation alleges:

- "that to whatever extent The Fray now claims that they have been damaged because Mr. Latterman allegedly did not disclose all material terms of [Latterman's] agreement with EMI, and that the Plaintiffs entered into a publishing agreement with EMI instead of Sony-ATV, the fault lies not with Mr. Latterman, who would have

4

> been willing to answer additional questions and who had put both Mr. Hunter and Mr. King on notice of GAC's agreement with EMI, but with Mr. Hunter, who failed in his duty . . . ."

Designation at 2.

## ARGUMENT

### A. THERE WAS A SOUND BASIS FOR WAITING UNTIL AFTER MR. HUNTER'S DEPOSITION TO SUBMIT THE DESIGNATION

Latterman does not dispute that the proposed Designation was submitted after the presumptive 90 days from the commencement of the action. *See* C.R.S. §13-21-111.5. But the statutory 90-day time limit is not absolute and is in no sense jurisdictional. The statute itself gives a trial judge the discretion to extend the time for filing "if the court determines that a longer period of time is necessary." *Redden*, 38 P.3d at 84. *See e.g.*, *Jenkins v. FMC Technologies, Inc.*, 2009 US Dist Lexis 480068 (Dist. Colo. 2009) (explaining that leave had been granted to file a non-party at fault designation nine months after the commencement of the action) (Exh. A to Plaintiffs' Opposition).

In this instance, the reasons for the delay are legitimate. The Designation identifies well-known music industry attorney Reid Hunter as a non-party at fault. One would hope that there always would be reflection and care taken prior to leveling charges of professional negligence against a lawyer. Indeed, Colorado law requires it; a non-party at fault designation "must be based on factual inquiry and is subject to sanctions for frivolous and groundless actions imposed by Colo. Rev. Stat. §13-17-102." *Watters v. Pelican Intern., Inc.*¸ 706 F.Supp. 1452, 1456 (D.Colo. 1989). Defendants cannot be criticized for waiting to file the Designation until after they had heard Mr. Hunter's sworn testimony explaining his conduct in this matter. As this Court previously has recognized, the "natural course of litigation may prevent a defendant from

5

developing a well-founded designation until after the 90-day designation period has run." *Id*. at 1457.

Mr. Hunter was deposed on March 12, 2010. The parties received the official transcript of his deposition on March 25, 2010. The designation was filed April 22, 2010, less than a month after the transcript was received. This is not undue delay.

Contrary to Plaintiffs' assertions, the information obtained from Mr. Hunter's deposition was not in Mr. Latterman's possession "well before the lawsuit was filed." Mr. Latterman was not privy to any advice that Mr. Hunter may have given the band members regarding Mr. Latterman's disclosure of his conflict of interest. Nor could Mr. Latterman have any basis to know why Hunter did not ask Latterman additional questions at the time Latterman disclosed his conflict. In deposition, Mr. Hunter testified that he had not asked questions about the disclosed conflict because to ask questions would have been "a difficult proposition [as] a new lawyer in the relationship to go grilling the manager the first day." Hunter Deposition at 290.[3]

This answer is breathtaking. If a band's manager discloses to the band's independent attorney a conflict of interest with respect to an important business transaction, any competent lawyer would ask questions to ensure that the clients' interests are protected. Hunter admits that he failed in this task.

In addition, Hunter knew that his client Joe King was having a conversation with Mr. Latterman about Latterman's potential conflict and yet "did not provide Mr. King any advice or direction as what kind of questions he should ask Mr. Latterman." Hunter Deposition at 162.

---

[3] Deposition transcript pages are not provided with this pleading, as Plaintiffs have designated the deposition as "confidential," so attaching the pages would not be consistent with the Court's protective order. Presumably, Plaintiffs' counsel will inform the Court if Mr. Hunter's deposition has been quoted inaccurately.

6

This was new information that Latterman could not have known.  Hunter's silence and complete lack of any advice to his client were not consistent with the practice of an attorney who was fulfilling his professional responsibilities.

Thus, it was not until Mr. Hunter's deposition, via Hunter's own admissions, that Latterman had specific evidence that Hunter's conduct with respect to The Fray fell below the appropriate standard of care.  This constitutes a sound reason for the delay in filing the Designation.  *See Antolovich v. Brown Retail Group, Inc.*, 183 P.3d 582, 593 (Colo. App. 2007) (allowing months late notices of non-party at fault where discovery had been necessary to establish basis for designation and there was no prejudice to trial schedule).

**B.   EXCUSABLE NEGLECT IS NOT A CONSIDERATION IN DECIDING WHETHER TO EXTEND TIME FOR FILING A NON-PARTY AT FAULT DESIGNATION**

Plaintiffs misstate the standard for whether an untimely designation should be accepted, suggesting incorrectly that "excusable neglect" must be shown.  Opposition at 3 (*citing Redden*, 38 P.3d at 84; and *Daugherty v. Bissell*, 2009 U.S. Dist. LEXIS 85807, *4-*5).  As the Colorado Court of Appeals explicitly has made clear, excusable neglect is not to be considered in deciding whether to extend the 90 days for a non-party at fault designation.  "Section 13-21-11.5(3)(b) expressly permits a court to accept non-party designations filed outside the 90-day period when it determines that 'a longer period is necessary.'  It does not require a determination that an untimely filing was also the product of excusable neglect."  *Antolovich,* 183 P.3d at 592.

Plaintiffs misread the Supreme Court's *Redden* decision to argue that one must consider whether "excusable neglect" was present.[4]  In the *Redden* case, the non-party at fault designation

---

[4] This misreading is perhaps understandable because the unpublished *Daugherty* decision by this Court makes the same error, citing *Redden* for the proposition that excusable neglect should

7

involved the fault of a healthcare professional. Where a healthcare professional is involved, a defendant making the designation also must file a certificate of review within 60 days after filing the designation. The designating party in *Redden* was given extra time beyond the 90 days to make the non-party designation but also missed the 60-day deadline for the certificate of review. The Colorado Supreme Court in *Redden* assessed whether the trial court had abused its discretion in dismissing the designation for failure to provide the <u>certificate of review</u> in a timely way. *Redden*, 38 P.3d at 83-84 (stating that it assumed the trial court had denied the non-party at fault submission because the certificate of review "was tardy under section 13-20-602(1)(a)"). The *Redden* decision's reference to "excusable neglect" therefore was not related to extending the 90 days for the non-party at fault designation.[5]

**C.   THERE IS NO UNFAIR PREJUDICE TO PLAINTIFFS IN PERMITTING THE LATE DESIGNATION**

Putting aside excusable neglect, factors that should be considered in allowing a late non-party designation include whether acceptance of the designation would comport with substantial justice and whether there is any unfair prejudice to the Plaintiffs in allowing the late designation. The Court also may consider the burden on the judicial system of a late designation in terms of managing the docket and moving the case toward trial. *Giles v. Inflatable Store, Inc.*, 2008 WL 4079242 (D.Colo. 2008) (allowing late designation of non-party previously known to Plaintiffs,

---

be one of three factors considered in determining whether to extend the 90 day period. A close rereading of *Redden* demonstrates no such holding by the Colorado Supreme Court.

[5] For example, the *Redden* opinion references the "excusable neglect" standard cited in *Hane ex rel. Jabalera v. Tubman*, 899 P.2d 332 (Colo. App. 1995), which was itself a case about the failure to timely provide a certificate of review. *Redden*, 38 P.3d at 84. By contrast, the *Antolvich* decision, which was decided after *Redden* and cites to *Redden*, holds categorically that there need be no showing of excusable neglect in deciding whether to accept a non-party at fault designation more than 90 days after the commencement of an action. 183 P.3d at 592.

8

where "Plaintiffs have not identified any prejudice" and there was no showing that allowing the designation would "impose a burden on the efficient progress of litigation"). Opinion attached as **Exh. 1**.

Accomplishing substantial justice and the avoidance of unfair prejudice are the two touchstones of any decision whether to extend a procedural deadline. *See, e.g., Estep v. People*, 753 P.2d 1241, 1248 (Colo. 1988) (even in the face of inexcusable neglect by attorney in missing deadline for notice of appeal, where opposing party suffered no prejudice, "interests in substantial justice and judicial economy" would best be served by accepting late-filed notice); *Todd v. Bear Valley Village Apartments*, 980 P.2d 973, 979-80 (Colo. 1999) (where failure to comply with discovery deadline relating to expert disclosures was harmless to opposing party due to unrelated trial continuance, it was abuse of discretion to preclude endorsement of additional expert as untimely).

Here, there is no negative impact to the various deadlines at issue and there is no prejudice to Plaintiffs. No trial date has been set. Discovery is in its early stages. The discovery cutoff is not until September 30, 2010. Dispositive Motions are due October 29, 2010. Initial expert reports are not due until June 30, 2010. No deadlines will need to be changed as a result of allowing the non-party at fault designation. "This is simply not a case where Plaintiffs were blind-sided late in litigation about the alleged fault of a non-party to which the fact finder could attribute liability." *Giles,* 2008 WL 4079242.

### D.     HUNTER HAS BEEN PROPERLY DESIGNATED A NON-PARTY AT FAULT

With respect to effectuating substantial justice, the purpose of the non-party at fault designation is to "ensure that parties found liable will not be responsible for more than their fair

9

share of the damages." *Pedge v. RM Holdings, Inc.*, 75 P.3d 1126, 1128 (Colo. App. 2002). Correspondingly, the specificity demanded in the designation is intended to "avoid a defendant attributing liability to a non-party from whom the plaintiff cannot recover." *Redden*, 38 P.3d at 80.

In this instance, to whatever extent blame should be shared (if there is any blame to be attributed to Mr. Latterman at all), Mr. Latterman has given fair notice that, come trial, he will seek to place some portion of that blame on Mr. Hunter, as Colorado's legislature has declared he is entitled to do. The Designation comports with all necessary requirements as it clearly sets "forth facts sufficient to permit a plaintiff to identify the transaction or occurrence which purportedly leads to the non-party's fault." *Resolution Trust Corp. v. Deloitte & Touche*, 818 F.Supp. 1406, 1408-09 (D. Colo. 1993). It also alleges "sufficient facts to 'satisfy all the elements of a negligence claim'." *Antolovich*, 183 P.3d at 591. As the Colorado Supreme Court has emphasized, Mr. Latterman is under no requirement at the time of filing the Designation *to prove* Hunter's negligence. *Redden*, 38 P.3d at 81. Nor must Latterman include with the Designation any evidence of the claim against Hunter. *Id.* (*citing Sandoval v. Archdiocese of Denver,* 8 P.3d 598, 606 (Colo. App. 2000)). All that is required for a proper non-party designation is for the allegations contained therein to "connect[] alleged facts with established elements of negligence." *Redden*, 38 P.3d at 75.

Of course, if, at trial, Latterman is unable to produce sufficient evidence from which a reasonable juror could conclude Mr. Hunter shares the fault in this matter, then Latterman will not be entitled to ask that the jury be given the non-party liability jury instruction. *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536 (Colo. 1997). But it would be premature to strike the

Designation at this early stage without giving Mr. Latterman the opportunity to muster evidence (including expert testimony) to prove his specific allegations against Mr. Hunter. The case of *Austine v. Alexander*, 128 P.3d 249, 259 (Colo. App. 2006), citied in Opposition at p. 11, actually proves this point. The *Austine* court reviewed a decision to strike a non-party at fault designation of attorneys and to not allow the non-party claim to go to the jury. After considering the trial record, the court affirmed, finding "there was neither expert testimony nor any other evidence *in the record* to establish the standard of care applicable to the nonparty attorneys." *Id.* at 259 (emphasis added). In contrast to *Austine*, where the striking of the designation was made after the presentation of all trial evidence, no Colorado case anywhere holds that a designating party must provide expert testimony proving an attorney's malpractice at the time of the designation. The non-party at fault statute itself makes reference to the fact that it is the "finder of fact" at trial who is to consider the degree or percentage of negligence or fault of a person not a party, and the finding should be "based on evidence thereof, which shall be admissible, in determining the degree or percentage of negligence or fault of those persons who are parties to such action." C.R.S. 13-21-111.5 (3)(a). Latterman cannot be taken to task for not definitively proving his case with admissible evidence at this early stage.

E.  **HUNTER, AS ATTORNEY, HAD A DUTY TO THE PLAINTIFFS AND MAY BE DESIGNATED A NON-PARTY AT FAULT BECAUSE OF THAT DUTY**

Plaintiffs argue at page 6-8 of their Opposition that Hunter cannot be designated a non-party at fault because all the damages Plaintiffs claim arise "from a contractual relationship between Plaintiffs and Latterman to which Mr. Hunter was not a party." Citing *Cherry Creek Mortgage Co. v. Chiu* (2008 U.S.Dist. LEXIS 104426), Plaintiffs maintain that because Hunter was not a party to the management contract between The Fray and Latterman, he cannot be

11

allocated fault in this lawsuit. This argument fails. Plaintiffs are suing Latterman in tort. Hunter's legal duty to the Plaintiffs makes him a legitimate non-party at fault.

*Cherry Creek Mortgage* involved a contract claim on a promissory note. That court held that where a party is suing only on a breach of contract, and not a tort, it is not appropriate to designate a non-party at fault where the non-party was not a party to the contract. If The Fray were to dismiss the four tort claims against Latterman (two counts of fraud and two counts of breach of fiduciary duty) Plaintiffs' argument might have some validity. But Latterman is being accused of tortious conduct, not merely a breach of contract, and as such, he is entitled to argue that the fault for the damage caused to Plaintiffs should be apportioned to others.

Attorney Hunter may not have been the The Fray's manager, but he was their lawyer and the negotiator for their publishing transaction. Hunter was also the band's negotiator for their management contract with Mr. Latterman. As lawyer and agent for The Fray, Hunter had a duty to the band members. The existence of Hunter's duty and the allegation that the breach of that duty contributed to Plaintiffs' damages is enough to justify the non-party at fault designation. *See Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1215-16 (10th Cir 2001) (in case involving children injured when sled collided with resort's ski grooming machine, existence of mother's duty of care to children was enough for her to be properly designated as non-party at fault).

## **CONCLUSION**

This Court should grant Latterman's Motion and allow the designation of attorney Reid Hunter as a non-party at fault.

DATED: April 28, 2010.

Respectfully submitted,

*s/ Reid Neureiter*
Lawrence G. Katz, #32724
N. Reid Neureiter, #29747
JACOBS CHASE FRICK KLEINKOPF & KELLEY LLC
1050 17th Street, Ste 1500
Denver, CO 80265
Telephone:   303-685-4800
Fax:              303-685-4869
E-mail:         lkatz@jacobschase.com
                    rneureiter@jacobschase.com

Sandra A. Crawshaw-Sparks
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Telephone:   212-969-3915
Fax:              212-969-2900
E-mail:         SCrawshaw@proskauer.com
ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 28, 2010, I electronically filed the foregoing REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE NOTICE OF DESIGNATION OF NON-PARTY AT FAULT AND OPPOSITION TO ALTERNATIVE MOTION TO STRIKE with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

  John Roche  jroche@talawfirm.com
  Ryan C. Carson  rcarson@talawfirm.com
  Kyle Seedorf  kseedorf@talawfirm.com
  TAYLOR/ANDERSON, LLC
  1331 17th Street, Ste 1050
  Denver, CO 80202

  Robert L. Sullivan  rsullivan@loeb.com
  LOEB & LOEB LLP
  1906 Acklen Avenue
  Nashville, TN 37212

              *s/ Claudia Jones*
              Legal Assistant